**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1210-20

RALPH VANCE and
MARGARET VANCE,

     Plaintiffs-Respondents,

v.

DIVERSIFIED INVESTMENTS,
d/b/a PINE HAVEN CAMPING
RESORT,

     Defendant-Appellant.

_____

Submitted September 28, 2021 – Decided October 19, 2021

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. DC-000793-20.

Lori C. Greenberg & Associates, attorneys for appellant (Lori C. Greenberg and Mary T. Madden, on the brief).

Respondents have not filed briefs.

PER CURIAM

Defendant operates a campground in Cape May County. Plaintiffs signed a rental contract for the October 1, 2019 to September 30, 2020 season. Full payment was due on May 31, 2020. However, in March 2020, the campground was closed pursuant to the Governor's COVID-19 Executive Order. Plaintiffs had paid a sizeable portion of the contract price, but they had not yet paid the full amount due. The campground remained closed until May 6, 2020.

Prior to the campground's re-opening, plaintiffs requested a refund of their monies, citing: (1) the campground's closure under the Executive Order; (2) the ongoing danger due to the COVID-19 pandemic; and (3) Ralph Vance's health issues, including his medical conditions of diabetes and congestive heart failure.[1] Defendant denied the request in June 2020 and demanded the remaining monies owed under the contract.

After a bench trial, the trial judge found the campground was temporarily closed under an Executive Order, not because of an act of nature. Therefore, plaintiffs were entitled to a return of the monies covering the period of March 30 to May 5, 2020. The judge also found defendant failed to mitigate its damages after learning plaintiffs did not intend to use the campsite at all.

---

[1] Plaintiffs included a note from Ralph's physician informing that Ralph was at a high risk of contracting COVID-19 and should quarantine at home.

A-1210-20

Therefore, plaintiffs were entitled to an additional refund of monies for several months. The court dismissed defendant's counterclaim that sought the balance due on the contract as well as legal fees and costs.

In a December 22, 2020 order, the court entered judgment for plaintiffs for $3903.54. For the reasons stated below, we affirm the entry of judgment for plaintiffs but remand for the court's consideration of defendant's counterclaim regarding counsel fees and costs.

In reviewing a determination based on evidence and testimony presented at a bench trial, "we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974) (internal citations omitted).

An interpretation of a contract is reviewed de novo. Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). Therefore, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Twp. of Manalapan, 140 N.J. 366, 378 (1995). We "look at the contract with fresh eyes." Kieffer, 205 N.J. at 223.

A-1210-20

On appeal, defendant disputes the court's determination that plaintiffs were entitled to a refund for the monies paid for the time the campground was closed under the Executive Order. It also challenges the court's finding that plaintiffs were entitled to a partial refund of the monies paid toward the remaining summer months because of Ralph's health problems after the campground reopened.

Pertinent to this appeal, the parties' contract stated, "There will be no refunds on rent for voluntary departure, acts of nature or removal by eviction." It also provided that "[t]here will be no refunds for early departure whether voluntary or involuntary." The contract required the camper "to pay and discharge all reasonable costs, attorney's fees, collection fees and expenses that shall be incurred by Pine Haven, LLC in enforcing the terms of this Agreement."

Defendant states that the contract's language prohibits any refunds for a camper's nonuse of its property due to an act of nature or for any early departure. Specifically, defendant contends its property was closed due to an act of nature between March and May 2020 and under the force majeure clause in the contract, plaintiffs were not entitled to a refund during that period of time. We disagree.

 A-1210-20

We construe a force majeure clause narrowly. Hess Corp. v. ENI Petroleum US, LLC, 435 N.J. Super. 39, 47 (App. Div. 2014). A party's performance is only excused if the force majeure clause "specifically includes the event that actually prevents a party's performance." Ibid. (quoting Kel Kim Corp. v. Cent. Mkts., Inc., 519 N.E.2d 295, 296 (N.Y. 1987)). The campground was closed pursuant to an Executive Order. Therefore, under its contract, defendant could only avoid responsibility for a refund if an "act of nature" included executive orders. We see no support for such an interpretation. Because the force majeure clause in the contract here does not include "government acts or directives," we are satisfied the trial court correctly refunded plaintiffs their monies paid for the weeks the campground was closed.

Defendant relies on the same contractual language in asserting the trial court erred in awarding plaintiffs a partial refund due to Ralph's health even after the campground reopened. In considering this argument, the trial court found that, although defendant was informed by plaintiffs that they could not use the campsite for the remainder of the contract term, defendant did not take any steps to mitigate its damages. Specifically, the trial court found defendant could have re-rented the site to another patron but it made no attempts to do so.

A-1210-20

Because the court found it might have taken defendant several months to find a substitute renter, it did not award a refund to plaintiffs for the months of May through July. However, the court did grant a refund for August through October 2020, resulting from its determination that defendant could have re-rented the site for those months.

Under common law, injured parties have a duty to "take reasonable steps to mitigate their damages." State v. Ernst & Young, L.L.P., 386 N.J. Super. 600, 617 (App. Div. 2006) (citing McDonald v. Mianecki, 79 N.J. 275, 299 (1979); White v. Twp. of N. Bergen, 77 N.J. 538, 546 (1978)). We have stated that, although an injured party has not breached the contract, it cannot recover damages "to the extent that the injured party could have avoided his losses through reasonable efforts 'without undue risk, burden or humiliation.'" Id. at 618 (quoting Ingraham v. Trowbridge Builders, 297 N.J. Super. 72, 82-83 (App. Div. 1997)).

Defendant had a duty to mitigate damages when it became aware that plaintiffs were not coming to the campground after it reopened in May. On April 30, 2020, plaintiffs sent an email to defendant requesting a refund of the $5445.80 that had been paid to date, and stating they were quarantining in Pennsylvania due to Ralph's health conditions and the ongoing stay-at-home

order. At that point, defendant should have taken reasonable actions to mitigate its damages by renting plaintiffs' camping site to someone else.

Although defendant argues that plaintiffs had the duty to mitigate their damages, there is no similar duty imposed under contract law. Only the party claiming damages for a breach of contract has a duty to mitigate its damages. Sommer v. Kridel, 74 N.J. 446, 454 n. 3 (1977). Moreover, the contract prohibited the "[s]ubleasing of [plaintiffs'] [s]ite or camping unit." The trial court did not err in finding defendant had a duty to mitigate its damages. We discern no error in the entry of judgment for plaintiff.

We turn, then, to the dismissal of defendant's counterclaim. Although we agree defendant was not entitled to the remaining balance owed on the contract, it may be entitled to attorney's fees and costs. Under the contract, the "[s]easonal [c]amper agree[d] to pay and discharge all reasonable costs, attorneys' fees, collection fees and expenses that shall be incurred by Pine Haven, LLC in enforcing the terms of this Agreement." The judge did not address that provision in his decision.

Defendant did incur fees and costs in undertaking this lawsuit. It is well-settled in New Jersey that a court must enforce, as written, contract terms that are clear and unambiguous. Cnty. of Morris v. Fauver, 153 N.J. 80, 103 (1998).

7

The contract language states defendant is entitled to the fees and costs incurred in prosecuting the litigation. Defendant's counsel presented a certification to the trial judge advising her legal fees were $1610. We therefore remand to the trial judge solely for a determination of the reasonableness of defendant's fees and costs incurred in the trial court. Thereafter, the court shall execute an Order of Judgment comprising the amount due to plaintiffs, offset by defendant's counsel fees and costs.

Affirmed in part, vacated in part and remanded for the consideration of defendant's attorney's fees and costs in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8